UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| ROBERT GRAHAM and<br>MICHAEL SHANE,<br><br>    Appellants,<br><br>v.<br><br>VERTRUE INCORPORATED,<br><br>    Appellee. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil No. 05-231-P-S<br>Bankruptcy No. 04-20734 |

**ORDER ON APPEAL OF THE DECISIONS OF THE BANKRUPTCY COURT**

Before the Court is an appeal brought by Robert Graham and Michael Shane (together, "Appellants"). The Appellants are the individual principals of Vital Basics, Incorporated ("VBI"), the debtor before the Bankruptcy Court. Appellee is Vertrue Incorporated ("Vertrue"). This Court has previously affirmed the decision of the Bankruptcy Court to confirm an arbitration award received by Vertrue and allow Vertrue's claim against VBI. At issue in this appeal are Vertrue's separate attempts to recover against Appellants individually.

Specifically, Appellants challenge the following decisions by the Bankruptcy Court: (1) the November 3, 2005 decision denying Appellants' Motion to Dismiss and (2) the November 3, 2005 decision granting Vertrue's Motion for a Determination that its Claims against Graham and Shane are Beyond the Jurisdiction of the Bankruptcy Court, or in the Alternative, Non-Core. For reasons explained herein, the Court AFFIRMS both of these decisions.

1

## I.   STANDARD OF REVIEW ON APPEAL

When a party chooses to appeal a bankruptcy court decision to the district court pursuant to 28 U.S.C. § 158(a), the district court reviews the bankruptcy court's conclusions of law *de novo* and any factual findings under the more deferential clearly erroneous standard. See, e.g., Davis v. Cox, 356 F. 3d 76, 82 (1st Cir. 2004); Groman v. Watman (In re Watman), 301 F.3d 3, 7 (1st Cir. 2002).  Appellants' objections focus on the Bankruptcy Court's legal conclusions.  Thus, the Court has engaged in a *de novo* review of this matter and given full consideration to both the written submissions of the parties on appeal, as well as the entire record that served as the basis for the Bankruptcy Court's rulings.

## II.   BACKGROUND

The dispute between the parties began in 2003.  At that time, Vertrue did business with the Appellants pursuant to a marketing agreement between Vertrue and Appellant's company, VBI.  Under this marketing agreement, VBI earned commissions for direct marketing of Vertrue's membership programs.  Per the terms of the agreement, Vertrue generally paid these commissions to VBI before they were actually earned subject to a later accounting by which the VBI and Vertrue would settle up.  When it became clear that Vertrue had overpaid VBI's commissions and that VBI was unable and/or unwilling to repay previously advanced yet unearned commissions, Vertrue sought arbitration under the marketing agreement alleging that VBI breached the agreement.  In addition to its claims for breach of contract, Vertrue sought punitive damages via arbitration claiming that VBI had engaged in unfair and deceptive acts that constituted a violation of the Connecticut Unfair Trade Practices Act ("CUTPA").  The arbitration ended in an

award of damages for Vertrue. Specifically, VBI was ordered to pay Vertrue damages totaling $4,898,538.00, said award including an award of $1,340,000.00 in punitive damages for the CUTPA violations.

VBI filed for bankruptcy protection in May 2004. The Bankruptcy Court confirmed the Third Amended Joint Plain of Reorganization for VBI on December 29, 2004 (the "Plan" or "Confirmed Plan").[1] Under the Plan, Graham and Shane provided promissory notes totaling over $3.8 million thereby personally guarantying repayment of this amount under the terms of the Plan. In exchange for the promissory note, the Plan provides that Graham and Shane are released and discharged "from and against any and all claims . . . arising from or related to loans and/or distributions made to [Graham or Shane] by [VBI] in the calendar year 2003." (Plan § 9.1.) In addition, absent an uncured default, approval of the Plan enjoined "all entities . . . from asserting any Claims of [VBI] . . . against or relating to [Graham and Shane]." (Plan § 9.4.)

Subsequently, Vertrue's arbitration award was confirmed and Vertrue's claim in the same amount was allowed by this Court following an appeal. Vertrue is, therefore, set to recover the entirety of the amount it was awarded in arbitration under the terms of the Confirmed Plan. Thus, it would appear that the dispute between Vertrue and VBI is on the path to resolution. Nonetheless, Vertrue has continued to pursue claims against Graham and Shane. This pursuit began with Vertrue's filing of a complaint in the Connecticut state court in December 2004. Vertrue's complaint was then removed to federal court in the District of Connecticut and then transferred to the District of Maine,

---

[1] A copy of the Plan is attached as Exhibit A to the December 29, 2004 Order Confirming Third Amended Joint Plan of Reorganization of VBI (Docket # 390 in Bankruptcy Case # 04-20734).

3

which, in turn, referred the case to the Bankruptcy Court handling the VBI bankruptcy case.

In its latest iteration, Vertrue's Second Amended Complaint, dated August 12, 2005, states claims for fraud and violations of CUTPA against Appellants Robert Graham and Michael Shane. In short, Vertrue claims it was damaged by false statements made by Graham and/or Shane. This Second Amended Complaint was drafted to comply with the Bankruptcy Court's ruling that these claims for fraud and violations of CUTPA could be pursued by Vertrue "only to the extent that proof of liability and/or damages on [each] claim does not require proof that VBI made distributions to [Graham or Shane] during 2003." (Order on Joint Mot. for Order Holding Vertrue and Edwards & Angell, LLP in Contempt at 2.)

Despite this limitation on Vertrue's claims, Graham and Shane have sought dismissal of Vertrue's Second Amended Complaint claiming it runs afoul of the protections extended to Graham and Shane under the Confirmed Plan. For its part, Vertrue asked the Bankruptcy Court to find that the Second Amended Complaint states claims that were not within the "related to" jurisdiction of the Bankruptcy Court and thereby allow Vertrue to pursue the claim stated in the Second Amended Complaint in this Court.

Faced with these two divergent requests regarding Vertrue's Second Amended Complaint, the Bankruptcy Court held a hearing on November 1, 2005. With respect to the Motion to Dismiss, the Bankruptcy Court orally ruled:

> That [Graham and Shane], as controlling insiders of [VBI], have reorganized their corporation under Chapter 11 does not shield them from personal liability to Vertrue if Vertrue can successfully show that they committed intentional individual torts with resulting damage. That's what Vertrue has alleged at this

4

>state, and on this record, the motion to dismiss will be denied under the argument that it violated the plan injunction.

(Nov. 1, 2005 Tr. at 6.) The Bankruptcy Court also indicated that, in its assessment, the Second Amended Complaint met the requirements of Rule 9(b). (See Nov. 1, 2005 Tr. at 13.)

With respect to the question of whether the Second Amended Complaint fell within the Bankruptcy Court's jurisdiction, the Bankruptcy Court described the procedural posture of the VBI bankruptcy case as "substantially post-confirmation hearing, the plan is set, the terms are . . . set, the claims are set . . . . Payments under the plan will proceed." (Nov. 1, 2005 Tr. at 10.) In light of this posture, the Bankruptcy Court concluded that the effect of the case on the claims administration process would be minimal, at best. (See Nov. 1, 2005 Tr. at 9-10.) After considering all of the possible impacts of VBI's Plan, the Bankruptcy Court concluded that there was no "related-to ground for jurisdiction." (Nov. 1, 2005 Tr. at 12.)

### III.   DISCUSSION

Having reviewed the Bankruptcy Court's denial of the Motion to Dismiss and the Bankruptcy Court's decision to grant Vertrue's Motion for a Determination that its Claims are Beyond the Jurisdiction of the Bankruptcy Court *de novo*, the Court briefly explains why it concurs with the conclusions reached by the Bankruptcy Court.

#### A.   The Motion to Dismiss

At the motion to dismiss stage, this Court must accept all of a complaint's factual allegations and "construe all reasonable inferences in favor of the plaintiffs" just as the Bankruptcy Court did. Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001). Construing the factual allegations via this forgiving lense, the

Court may only dismiss a complaint if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 34 (1st Cir. 2002) (internal quotations omitted). Quite simply, Vertrue's Second Amended Complaint clears this rather low hurdle as well as the hurdles set by Federal Rule of Civil Procedure 9(b).

Both the Bankruptcy Court and the District Court in Connecticut expressed some degree of skepticism as to Vertue's ability to prove its claims against Graham and Shane, especially with respect to damages. As the Bankruptcy Court noted, "the defendants [Graham and Shane] might, in defending against Vertrue's claims against them personally, assert that the existence of [the] allowed claims and the payments received— or to be received . . . are a defense or an offset to their individual liability to Vertrue." (Nov. 1, 2005 Tr. at 9.) In fact, before the District Court in Connecticut, counsel for Vertrue similarly acknowledged that Vertrue's claim might ultimately fail for lack of damages, stating:

> [Graham and Shane] may stand here one day and say, well, not they have been repaid, the company's now paid them back, so there's no losses. That's just a defense. That's not a bar to the claim. That's just saying we can't prove our losses. It's absolutely an essential element of a fraud claim to say we suffered loss, didn't get our money back.

(June 22, 2005 Tr. at 15 (Statement by Attorney Cowley).) On the current record, the Court is similarly skeptical about Verture's ability to prove and/or create a triable issue with respect to damages. However, the Court cannot say that there is no set of facts that would support awarding Vertrue damages and, thus, in the context of a motion to dismiss Vertrue is entitled to the benefit of the doubt. At this stage, it would be improper to foreclose Vertrue from pursuing active tortfeasors who might be jointly and severally

6

liable for damages with VBI. As the Bankruptcy Court noted, there are adequate ways to prevent any double recovery via the assertion of a defense or, alternatively, by returning to the Bankruptcy Court if and when there is a final judgment ordering Graham and Shane to pay damages to Vertrue.

The Court notes that it has also separately considered Appellant's argument that the Second Amended Complaint does not comply with Federal Rule of Civil Procedure 9(g). In response to this argument, Vertrue's counsel represented that it is not seeking special damages, but rather "natural damages," including "out-of-pocket advances made to VBI on the defendants' misrepresentations and the losses associated with the difference in value of the transactions falsely represented and as actually delivered" as well as punitive damages. (Vertrue Mem. of Law in Opp. to Defs.' Mot. to Dismiss at 26.) Based on this representation, the Court sees no reason to dismiss the Second Amended Complaint for failure to comply with Rule 9(g). See Wright & Miller, Federal Practice & Procedure § 1310.

For these reasons, the Court affirms the Bankruptcy Court's decision to deny the Appellant's Motion to Dismiss.

### B. The Motion for a Determination that Vertrue's Claims are Beyond the Jurisdiction of the Bankruptcy Court

Having determined that Vertrue's Second Amended Complaint can withstand the Appellants' Motion to Dismiss, the next question is simply whether the adversarial proceeding between Vertrue and the Appellants should proceed before the Bankruptcy Court or before this Court. The Bankruptcy Court concluded that the Second Amended Complaint was not within the "related to" jurisdiction of the Bankruptcy Court.

To the extent Appellants have argued that this ruling by the Bankruptcy Court somehow violated the "law of the case" as stated by the District Court in Connecticut prior to ordering the transfer, that argument is without merit. See, e.g., Harlow v. Children's Hospital, 432 F.3d 50, 55 (1st Cir. 2005) (discussing the law of the case doctrine).[2] The Court agrees with the Bankruptcy Court's assessment that the District Court in Connecticut did not and could not make a final determination that this matter fell within the "related to" jurisdiction of the Bankruptcy Court. (Nov. 1, 2005 Tr. at 4.)

Appellants next argue that the Bankruptcy Court improperly applied the Pacor test in determining that this case did not fall within the "related to" jurisdiction of the Bankruptcy Court.  Under the Pacor test, "related to" jurisdiction is determined by considering "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."  Work/Family Directions, Inc. v. Children's Discovery Centers, Inc. (In re Santa Clara County Child Care Consortium), 223 B.R. 40, 45 (1st Cir. B.A.P. 1998) (internal quotations omitted).  As already discussed above in the context of damages, it is certainly conceivable that payments to Vertrue under the Confirmed Plan will affect the outcome of the adversarial proceeding between Vertrue and Appellants.  Nonetheless, the Court concurs with the Bankruptcy Court's conclusion that it is unlikely that any award in this case will have an impact on the administration of the VBI's Confirmed Plan.  In reaching this conclusion, the Court has considered the procedural posture of VBI's bankruptcy case and the particular terms of the Confirmed Plan under which all creditors are already slated to receive complete

---

[2] The Court also notes that it does not consider it "law of the case" that any 2003 distributions to Graham and Shane will be admissible to prove intent or motive. (See, e.g., May 16, 2005 Tr. at 78-79.)  Given the limitation on Vertrue's claims, it would appear that evidence of any 2003 distribution should be considered irrelevant and unfairly prejudicial.  However, the Court will reserve ruling on this evidentiary question until it is, in fact, ripe.

payment on allowed claims. In addition, the Court has considered the previous rulings that have essentially foreclosed Vertrue from seeking recovery for any distributions VBI may have made to Graham or Shane during 2003. Under these unique circumstances, the adversarial proceeding between Vertrue and the Appellants falls outside the "related to" jurisdiction of the Bankruptcy Court. See Boston Regional Med. Center, Inc. v. Reynolds (In re Boston Regional Med. Center, Inc.), 410 F.3d 100, 107 (1st Cir. 2005) ("The existence vel non of related to jurisdiction must be determined case-by-case. . . . The language of the jurisdictional statute, 28 U.S.C. § 1334, is protean, and what is 'related to" a proceeding under title 11 in one context may be unrelated in another.")

For these reasons, the Court affirms the Bankruptcy's court's decision to grant Vertrue's Motion for a Determination that Vertrue's Claims are Beyond the Jurisdiction of the Bankruptcy Court.

## IV.     CONCLUSION

Finding no error in the various Bankruptcy Court rulings presented to this Court by way of this appeal, the Court hereby DENIES the appeal and AFFIRMS the decisions of the Bankruptcy Court.

SO ORDERED.

/s/ George Z. Singal
Chief U.S. District Judge

Dated this 9th day of August 2006.